STATE OF ILLINOIS, Philip Bradley, Director of the Illinois Department of Public Aid and Illinois Department of Public Aid, Petitioners,

v.

Donna E. SHALALA,* Secretary of the United States Department of Health and Human Services and Department of Health and Human Services, Respondents.

No. 92–3704.

United States Court of Appeals, Seventh Circuit.

Argued April 26, 1993.

Decided Sept. 7, 1993.

---

* Donna E. Shalala is substituted for her predecessor, Louis W. Sullivan, as Secretary of Health and Human Services. Fed.R.App.P. 43(c)(1).

Richard D. Raskin (argued), James C. Dechene, Sidley & Austin, Chicago, IL, Timothy J. O'Brien, Daniel C. Leikvold, Illinois Dept. of Public Aid, Springfield, IL, for petitioners.

Alvin N. Jaffe (argued), Dept. of Health and Human Services, Region V, Office of the Gen. Counsel, Chicago, IL, Louis W. Sullivan, Dept. of Health and Human Services, Washington, DC, for respondents.

Before CUDAHY and EASTERBROOK, Circuit Judges, and EISELE, Senior District Judge.**

CUDAHY, Circuit Judge.

The Secretary of Health and Human Services determined that two amendments to the Illinois Medicaid plan violated a federal Medicaid regulation requiring advance publication of notice of significant changes in Medicaid payment rates. The State of Illinois challenges that determination. We affirm.

## I.

In September 1989, the Illinois Department of Public Aid (the State) submitted to the Health Care Financing Administration of the Department of Health and Human Services (HHS) two proposed changes to the Illinois Medicaid program: State Plan Amendment (SPA) 89–11, which proposed changes to how rates are set for long-term care facilities, and SPA 89–13, which proposed changes to the payment method for inpatient hospital services at disproportionate share hospitals—that is, hospitals that treat a high percentage of low-income patients. Both amendments increased reimbursement rates for the benefit of Medicaid recipients and providers in Illinois.

The two amendments were mandated by Illinois statutes passed on June 30, 1989—the last day of the legislative session. The statutes, Public Acts 86–705 and 86–268, increased Medicaid reimbursement rates in Illinois, effective July 1, 1989. The Governor of Illinois signed P.A. 86–705 into law on September 1, 1989; notice of that amend-

ment was published in the Illinois Register on August 18 when the Governor's signing was assured. Public Act 86–268 became law on August 21, 1989, and the changes were published in the Illinois Register on September 1, 1989.

In reviewing the amendments, the Secretary of HHS approved both proposed amendments except for their July 1 effective date, concluding that under 42 C.F.R. § 447.205, the amendments could not be effective until the day after they were published in the Illinois Register. The Secretary therefore gave SPA 89–11 an effective date of August 19 and 89–13 an effective date of September 2, 1989. The Secretary's determinations essentially preclude Illinois from claiming federal financial assistance for the increased Medicaid reimbursement—50 percent of the State's expenditures in Illinois, see 42 U.S.C. § 1396b(a)(1) (1988 & Supp. III 1991)—between July 1, 1989, and the approved effective dates of the Medicaid program amendments.

Specifically, section 447.205 requires notice to be published before the proposed effective date of the change and to appear in either "[a] State register similar to the Federal Register," "[t]he newspaper of widest circulation in each city with a population of 50,000 or more," or "[t]he newspaper of widest circulation in the State, if there is no city with a population of 50,000 or more." 42 C.F.R. § 447.205(d) (1992). The State did not publish notice in a newspaper at all, and published notice in the Illinois Register well after the July 1 effective date, on August 19 and September 2. The State contends that the legislative process was highly visible, that the interested parties were closely involved, and that the contents and progress of both bills were widely published prior to enactment in various legislative journals, such as the Journal of the House, the Journal of the Senate, and the Illinois Digest.

In a final determination issued in September 1992 following a request for reconsidera-

** The Honorable Garnett Thomas Eisele, of the United States District Court for the Eastern District of Arkansas, is sitting by designation.

tion, the Secretary affirmed the original decision that section 447.205 applied to legislatively mandated changes and again denied the amendments their July 1 effective date. The State petitions for review of the Secretary's final determination that the two amendments to the Illinois State Medicaid Plan were not in conformance with federal Medicaid requirements.[1]

## II.

The Secretary's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 1316(a)(4) (1988). Review of questions of law is *de novo,* and the court is to give deference to the Secretary's interpretations of her own regulations unless those interpretations are arbitrary, capricious, or not in accordance with the law. 5 U.S.C. § 706(2)(A) (1988). This case presents three general questions. First, does section 447.205 apply to legislatively mandated amendments? Second, if it does, did the State comply with the regulation? And finally, if section 447.205 does apply to this case, is it arbitrary and capricious? We address these questions in turn.[2]

### The Applicability of Section 447.205

The State's principal argument on appeal is that section 447.205's publication requirements do not apply to amendments to the state's Medicaid plan that have been specifically mandated by valid state legislation. The State relies primarily on *Himes v. Sullivan,* 779 F.Supp. 258 (W.D.N.Y.1991) ("*Himes I*"), *aff'd,* 956 F.2d 1159 (2d Cir. 1992), a case the Second Circuit affirmed in an unpublished opinion, and the subsequent case on remand, known as *Himes II,* 806 F.Supp. 413 (W.D.N.Y.1992), to support that contention. *Himes I* recognized an exception to section 447.205 for "certain legislative-

ly mandated agency action," noting that such changes have gone through a public process and that the objectives of the notice requirement are already satisfied. 779 F.Supp. at 270; *see also Seniors United for Action v. Ray,* 529 F.Supp. 55 (N.D.Iowa 1981), *aff'd,* 675 F.2d 186 (8th Cir.1982). The court further noted that when the newly enacted state law does not require interpretation or discretion by the state Medicaid agency, full compliance with 447.205 is not mandated. 779 F.Supp. at 270. On remand, the *Himes II* court re-adopted its original *Himes I* position, commenting further that, where "[a]ll the state agency did here was to implement a clear state statutory mandate," no notice is required. 806 F.Supp. at 417. In that regard, the State also finds support in a sentence in the preamble to the amended regulations stating that "[c]hanges that are a direct result of legislative action have already gone through a public process and should not need a further prolonged notice period before finalization." 46 Fed.Reg. 58,679 (Dec. 3, 1981).

*Himes* provides significant authority for the State's position that section 447.205 is not applicable to legislatively mandated revisions. Yet other language in the same preamble upon which the State relies strongly suggests another view. The preamble to the December 1981 regulations—which effectuate something of a compromise between rescinding the notice requirement altogether and retaining a 60-day requirement[3]—states in full that

> a set two-month waiting period for all reimbursement changes is too inflexible. It does not allow States to respond timely to legislatively mandated changes. Changes that are a direct result of legislative action have already gone through a public process and should not need a further prolonged

---

**1.** The final determination of the Secretary is subject to direct review by the Court of Appeals pursuant to 42 U.S.C. § 1316(a)(3) (1988).

**2.** At the request of the panel, the parties also submitted supplemental briefs addressing the threshold question of what is at stake in this dispute. Upon reviewing those briefs, we are satisfied that this case presents a justiciable controversy.

**3.** The notice provision, which was first added to the Medicaid regulations in 1979, originally required 60 days public notice prior to the proposed effective date. In 1981, the Secretary proposed to eliminate the 60-day notice requirement in response to widespread criticism among the States. *See* 46 Fed.Reg. 45,964 (Sept. 16, 1981). The Secretary ultimately revised the provision to require publication only before the proposed effective date. 42 C.F.R. § 447.205(a) (1992).

notice period before finalization. We believe that specifying that a public notice must appear before the effective date of the proposed changes, without prescribing a definite comment period, is an adequate Federal requirement.

*Id.*

Read in context, then, the preamble language the State cites to support an exception to the notice requirement for legislatively mandated changes actually sustains the opposite view. The text of the preamble makes clear that the amended notice requirement was believed to better accommodate the unique considerations applicable to legislatively mandated changes than to exempt such changes altogether. There remains little doubt in light of such language that the regulations contemplate their application to Medicaid amendments specifically mandated by legislation.

In addition, the case that *Himes I* relies on in its discussion of notice, *California Ass'n of Bioanalysts v. Rank,* 577 F.Supp. 1342 (C.D.Cal.1983), does not unqualifiedly recognize an exemption for legislatively mandated changes. The court does state that "[a] partial exception to the full notice requirements of § 447.205 exists for certain legislatively mandated agency action," *id.* at 1348; in this connection, however, the court concluded that compliance with subsection (d), requiring publication of the proposed change "before the proposed effective date," still was necessary. *Id.* This further undercuts the State's contention that the legislative exception it argues for is absolute and obviates *any* compliance with section 447.205's publication requirements.

In sum, although the State's point that the value of the notice requirement is greatly diminished in a situation involving legislatively mandated revisions is well taken, the Secretary's clearly expressed understanding in the preamble to the regulations confirms only the intent that the shorter notice requirement, not the elimination of notice entirely, apply to legislatively mandated changes.

*Compliance with Section 447.205*

The State contends that, if section 447.205 does apply to the revisions in question, then the State complied with its requirements by publishing the progress of the bills in various state publications, even though the revisions were not published in the Illinois Register or large circulation newspapers prior to their effective date. According to the State, "What matters is that the *Illinois Digest* publications—and others like them—informed interested parties that the Legislature was considering the enactment of laws that would have a significant impact on Medicaid expenditures for nursing homes and disproportionate share hospitals." Appellant's Reply Br. at 19.

Although the State's position has logical appeal, we agree with the Health Care Financing Administration Administrator that the phrase appearing in the regulation, "State register similar to the Federal Register," requires publication in the Illinois Register. Other legislative publications may provide information about various legislative and administrative actions, but the Illinois Register, as the Illinois publication in which state agency rules of general applicability are required to be published, is the state version of the Federal Register. The Illinois Register provides the information systematically, completely, and in final form. The State's contention that other publications can satisfy the notice requirement is not persuasive.

The State also argues that, even if it did not comply with section 447.205's notice requirements, such compliance is unnecessary where the affected parties received actual notice. Even if all affected parties did receive actual notice through the legislative process—a proposition the Secretary understandably disputes—we agree with the Administrator that the State is not relieved from at least minimal compliance with section 447.205(d)'s requirement of publication before the proposed effective date. *See Rank,* 577 F.Supp. at 1348.

*The Validity of Section 447.205*

Finally, the State argues that, if section 447.205 is applicable to this case and if the State has not met its requirements, then the regulation is arbitrary and capricious.

The State characterizes the one-day advance notice requirement of a legislatively mandated change as "a mere formality—an empty gesture—serving no purpose whatsoever." Appellant's Reply Br. at 23. Section 447.-205's amended terms represent a compromise quite clearly intended to apply to legislatively mandated revisions. The provision may be a peculiar compromise in that one-day advance notice of a legislatively mandated change allows minimal opportunity for public comment—certainly no more than the legislative process itself. That is not to say, however, that the provision is arbitrary or capricious. The provision's reduced notice requirement may be a formality, but it still serves to provide public notice prior to the revision's effective date, an admittedly limited function but by no means one that constitutes "no purpose whatsoever." The Secretary's interpretation of section 447.205 to require advance notice of legislatively mandated changes in the Illinois Register therefore maintains "a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983).

### III.

Section 447.205 is reasonably interpreted as applicable to the legislatively mandated revisions to the Illinois Medicaid program. Moreover, because the State did not publish the revisions in their final form in the Illinois Register prior to their proposed enactment date, the State failed to comply with the notice requirement. Finally, section 447.-205's notice requirement may be less effective when imposed upon legislatively mandated amendments but it is not arbitrary or capricious. The Secretary's final determination is AFFIRMED.